FORT WORTH & DENVER CITY RAILWAY COMPANY V.
GEORGE W. MONELL.

Decided April 18, 1908.

**1.—Railroad—Venue—Nonresident—Statute Construed.**

The term "reside," as used in the Act of the 27th Legislature (Gen. Laws 1901, p. 31) concerning the venue of suits against railroads for personal injuries, does not mean a mere casual or temporary residence in the county in which the injury occurred. The term imports a habitation of some degree of permanency. Where, under a plea of privilege in a suit against a railroad for personal injuries, it appeared from the undisputed evidence that the plaintiff was a mere transient person, wandering from place to place in Texas and other States, without a habitation of any character of permanency, and without any intention or purpose of making any county in Texas his residence or domicil, the court properly held that the plaintiff was a nonresident of this State, and instructed the jury to find against the plea.

**2.—Personal Injury—Act of Third Party—Pleading—General Denial.**

Even though neither party specifically pleads, in a suit for personal injuries, that the act of a third party caused or contributed to the injury, the defendant cannot complain of the submission of the issue to the jury in the charge of the court when it introduced evidence raising the issue.

**3.—Personal Injuries—Act of Third Party.**

When the negligence of the defendant proximately causes plaintiff's personal injuries, the fact that an act of a third party may have concurred in producing the result will not relieve the defendant from liability.

Appeal from the District Court of Tarrant County. Tried below before Hon. Mike E. Smith.

*Spoonts, Thompson & Barwise,* for appellant.—Under the Acts of the Twenty-seventh Legislature, page 31, chapter 27, section 1, a suit for personal injuries shall be brought either in the county in which the injury occurred or in the county in which the plaintiff resided at the time of the injury. When employed for an indefinite time, as was appellee, and since he boarded in the county where the injury occurred, he must sue in that county though his domicil be in another State. Gulf, C. & S. F. Ry. Co. v. Rogers, 82 S. W. 822.

*Bell & Milam,* for appellee.—The District Court did not err in holding as a matter of law and so ruling that the defendant's (appellant's) plea of privilege was not sustained by any evidence, and in directing a finding against such plea. Acts of the Legislature of Texas, 1901, page 31; Willis & Bro. v. Whitsitt, 67 Texas, 673; Galveston, H. & S. A. Ry. Co. v. Cloyd, 78 S. W., 43.

The court did not err in submitting to the jury the law to the effect that if the defendant was negligent and if the negligence of the third party concurred with the negligence of the defendant and as a result of the negligence on the part of such person and the defendant, appellee was injured, the defendant would be liable. Galveston, H. & S. A. Ry. Co. v. Lynch, 55 S. W., 389; Consolidated K. C. S. Co. v. Binkley, 99 S. W., 181.

CONNER, CHIEF JUSTICE.—George W. Monell instituted this suit in the District Court of Tarrant County on the 13th day of April, 1907, against the Fort Worth & Denver City Railway Company and alleged that he was a nonresident of the State of Texas, and that while he was working for appellant as a member of an extra steel gang near the town of Childress, in Childress County, he and other members of the gang were notified by the foreman to proceed to the place where they were to get their dinner; that cars attached to a locomotive were provided upon which they were to go to the dining place; that as appellee was proceeding to get upon the cars so provided, the engineer in charge of the locomotive negligently started the same forward and caused the injuries complained of.

Appellant filed a plea of privilege seasonably raising the question that the appellee was not a nonresident of Texas at the time of the happening of his injury, within the meaning of the venue statute applying to this question, but at the time was a resident of Childress County, and that his suit should have been instituted there instead of in Tarrant County. Answering to the merits the appellant pleaded a general denial and contributory negligence.

There was a trial on July 12, 1907, which resulted in a verdict and judgment against appellant in the sum of five hundred dollars.

Appellant's main contention on this appeal is that the court erred in giving a peremptory instruction to find against appellant on its plea of privilege, and this contention must be sustained unless it can be said that the undisputed proof shows that appellee at the time of his injuries was a nonresident.

The law provides: "That all suits against railroad corporations, or against any assignee, trustee or receiver operating any railway in the State of Texas, for damages arising from personal injuries resulting in death or otherwise, shall be brought either in the county in which the injury occurred or in the county in which the plaintiff resided at the time of the injury: provided, that if the defendant railroad corporation does not run or operate its railway in or through the county in which the plaintiff resided at the time of the injury, and has no agent in said county, then said suit shall be brought either in the county in which the injury occurred, or in the county nearest that in which the plaintiff resided at the time of the injury, in which the defendant corporation runs or operates its road, or has an agent: and provided further, that in case that the plaintiff is a nonresident of the State of Texas, then such suit may be brought in any county in which the defendant corporation may run or operate its railroad, or may have an agent: provided, that when an injury occurs within one-half mile from the boundary line dividing two counties suit may be brought in either of said counties." See Acts 27th Legislature, page 31.

Appellee testified on his cross-examination that he was a married man; that his wife lived in Middletown, New York, but he had not lived with her for about four years before the trial; and was separated from her; that he got to Texas about November 1, 1906, coming from Colorado; that he was in Colorado only a short time and came to Colorado from Nebraska; that he went from Kansas to Nebraska and, in sort, for several years he had been drifting around from place to

place over the country; that since he had left New York and before he had gotten to Kansas, he had been in New Jersey, Pennsylvania, Ohio, Indiana, Illinois and Missouri; that when he came to Texas he walked down the line of the Fort Worth & Denver City Railway Company until he got in the vicinity of Vernon, where he picked cotton for a few days. But, as testified to by him, he wanted a little more money that he had on hand to travel with, so he applied to the foreman of the steel gang for a job on the railroad; that he expected to work on the railroad until he had earned about $50; that he had no particular time that he intended to work before he quit, further than that he wanted to raise about the amount of money specified; that if the conditions had suited him and he had gotten better employment and made money, he might have staid and worked permanently on the railroad. He went to work for the Fort Worth & Denver as a member of its steel gang at Oklaunion. They were taking up old and laying down new steel. They worked at Oklaunion two or three days and from there went to Childress. They were laying steel in and about the yards at Childress two or three days at the time of his injury; that during the time that he was at Childress he was living in a boarding car; that is, he slept in a boarding car and had his washing done there; that he did not take the employment with the railroad company for any definite length of time, further than that his idea was that he would likely work until he acquired a capital of about $50, which he thought would take him about two months, but if he had not been able to save up that much money within that time he probably would have kept on working; that New York was still his home, that he came to Texas from Colorado about the last of November, 1906, without any intention whatever of living in Texas; that if he had had an opportunity to remain with the company he would not have kept his position for a great while; that he had been working only two or three days at Childress when he was hurt; that he did not intend to live in Texas, but was going to Hot Springs for the purpose of opening up a poultry yard, but claimed his home in the State of New York, never having abandoned his purpose of returning to his said former home.

The statute under consideration has been several times construed and we need not discuss the distinction to be made between domicile and residence, nor the effect of the rule in this State that within the meaning of our venue statutes a person may have more than one residence. See Gulf, C. & S. F. Ry. v. Rogers, 82 S. W., 822, and Galveston, H. & S. A. Ry. v. Cloyd, 78 S. W., 43. It seems clear, however, that by the use of the term "reside" in the statute under consideration it was not meant that an injured person is to be held a resident of the county of his injury merely because of his casual or temporary presence. It is likewise clear that appellee was not a resident of any county in this State, and therefore was a nonresident of this State, unless he was a resident of Childress County. He, therefore, under the other admitted facts, properly instituted this suit in Tarrant County and the court properly so instructed the jury, unless the evidence raises the issue of his residence in Childress County.

Webster thus defines the term "reside": "To make an abode for a considerable time; be settled, as in a home; live; dwell;   . . . to exist as an attribute of; inhere; . . . " "To 'reside' means to dwell permanently for any length of time; 'a settled abode.' " . (Graham v. Commonwealth, 51 Pennsylvania 255, 88 Am. Dec., 581.)   "Residing out of the State, as used in an attachment statute, means having no abode within the State."   (Stout v. Leonard, 37 N. J. Law, 492.) "Residing therein, as used in Revised Laws, section 2818, requiring every town to relieve and support the poor and indigent persons residing therein, is to be construed as referring to persons having an actual residence, as contradistinguished from transients. . . ." (Town of New Haven v. Town of Middlebury, 21 Atl., 608.)   Many other citations might be made, but those given, we think, will be sufficient as illustrations.   The term itself imports a habitation of some degree of permanency.   The habitation must be coupled with the home thought —the intention for the time being to make it and no other the place of residence—and the term was in effect so construed in the case of Ry. v. Cloyd, *supra,* where it was held that employment of an unmarried man for several weeks on the railway in Pecos County did not have the effect of making his residence in that county.   In the light of the definition given, we think it clear from the undisputed testimony, the substance of which has been stated and all of which has been carefully considered, that appellee at the time of his injury was not a resident of Childress or of any other county in Texas, but was a nonresident within the meaning of the venue statute quoted.   Appellee was a mere transient person wandering from place to place in Texas and other States without a habitation of any character of permanency. It is clear that his purpose and intent was not to make any county in Texas his residence or domicile, and if he was without a residence in Texas he was a nonresident and it is immaterial whether his domicile was in the State of New York, or whether, indeed, he had one at any place.   He clearly could have been sued as a transient person under our venue statutes giving a right of action against such persons at any place where they may be found, and we conclude that the court committed no error in giving the peremptory instruction objected to.

There was evidence tending to show that as appellee was in the act of boarding the car he came in contact with another one of the employees of the appellant company, which caused or contributed to appellee's fall, and the court gave the following instruction:   "But you are instructed that if plaintiff was struck or pushed by a Mexican in the defendant's employ, and further, that the defendant was guilty of negligence in respect to the matters mentioned in section 1 hereof, and that such negligence, if any, combined with the act, if any, of said Mexican, was the cause of the injury, then the plaintiff will be entitled to recover, unless he was guilty of negligence contributory to his injury."   It is insisted that the charge was erroneous in that there was no pleading upon the part of appellee authorizing the submission of the issue, and that there was no proof that the jerking of the car, combined with the act of the employe, was the proximate cause of appellee's injury.   While the act of appellee's coemploye in coming in

contact with appellee, if he did so, was not specifically pleaded by either party, the evidence relating to the subject was developed on cross-examination and otherwise by appellant as a defense admissible under its general denial, and appellant is certainly in no attitude to complain of the injection of the issue upon the trial. The evidence leaves no room for doubt that had appellant's engineer given appellee a reasonable time, as it was his duty to do, to board the train before starting, the injury to appellee could not have happened, even though appellee's fall may have been aided by coming in contact with his coemploye. We see no evidence indicating negligence on the part of appellee or of the coemploye in thus coming together, and the concurrence of this cause, if so it was, can not relieve appellant from liability for the negligence of the engineer proximately bringing about the final result. (See Galveston, H. & S. A. Ry. v. Lynch, 22 Texas Civ. App., 336; Texas Mexican Ry. v. Higgins, 44 Texas Civ. App., 523; Consolidated K. C. S. Co. v. Binkley, 45 Texas Civ. App., 100.)

The concluding assignment is that the court erred in overruling appellant's motion for a new trial on the ground that the verdict of the jury was against the great weight and overwhelming preponderance of the testimony, in that the proof shows that the car the appellee was attempting to board when he was hurt was not started suddenly or violently, and that the proof shows the proximate cause of appellee's injury was the act of the coemploye in throwing appellee under the train. We have at least partially disposed of these contentions by what we have heretofore said. Appellee's testimony clearly shows that at the time he started to get on the car it was standing still; that he put his hands upon the car and went to spring up, and as he went to do so, the car without warning, started ahead with a sudden jerk, which caused his foot to slip and fall under the revolving wheels. We think the judgment should be affirmed, and it is so ordered.

*Affirmed.*